# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **WILFREDO GOMEZ**, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:23-cv-00348 ) ) Judge Charles Esque Fleming ) |
| vs. | ) **JOINT MOTION FOR APPROVAL** ) **OF FLSA COLLECTIVE ACTION** |
| **ATHENS FOODS, INC.,** | ) **SETTLEMENT** ) |
| Defendant. | ) |

Plaintiff Wilfredo Gomez ("Named Plaintiff") and Defendant Athens Foods, Inc. ("Defendant") (collectively, the "Parties") respectfully move the Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations and facilitated by a private, third-party neutral. The following documents are submitted for the Court's approval:

**Exhibit 1**: Joint Stipulation of Settlement and Release (the "Agreement"), along with its Exhibit A (Claim Form) and Exhibit B (Notice of Settlement);[1]

**Exhibit 2**: Declaration of Hans A. Nilges ("Nilges Dec.");

**Exhibit 3**: Declarations from Current Opt-in Plaintiffs; and,

**Exhibit 4**: Proposed Order approving settlement.

In support of this Joint Motion, the Parties state as follows:

## I. STATEMENT OF FACTS

### A. Factual and Procedural Background.

On February 23, 2023, Plaintiff filed this case (the "Lawsuit" or the "Action") against Defendant individually and on behalf of other allegedly similarly situated current and former

---

[1] Capitalized terms are intended to have the same meaning as provided in the Agreement.

hourly production employees. In the Action, Plaintiff alleged that Defendant failed to compensate hourly production employees for time spent donning and doffing sanitary clothing, washing their hands, and associated travel and wait times, all required by federal food safety regulations, resulting in unpaid overtime for those working more than 40 hours a week. (ECF No. 1).

On April 18, 2023, Defendant filed its Answer in which it denied all liability, and Defendant continues to deny any liability. (ECF No. 9; Agreement at ¶¶ G, I).

Settlement discussions began later in 2023, with the Parties jointly requesting extensions to conduct further investigation and engage in mediation with third-party neutral, Michael Ungar. The case was stayed multiple times to allow for these efforts, including continuing to investigate timekeeping issues and refine damages models. (ECF Nos. 14, 16-19, 22; Nilges Dec. at ¶ 9). On October 8, 2024, the Parties filed their notice of settlement. (ECF No. 24).

In advance of mediation, Defendant provided Plaintiffs' Counsel time and pay data for the putative collective/class, from which a damages model was created and shared with the mediator and Defendant's Counsel. The model served as a basis for settlement negotiations. (Nilges Dec. at ¶ 10; Agreement at ¶ D).

Throughout settlement discussions, including mediation, the Parties engaged in good faith, arms' length negotiations, exchanged numerous settlement proposals, and were able to debate the merits of the Action. The Parties ultimately reached a settlement, the terms of which are encompassed in the attached Agreement. Court approval of this Settlement will result in a Release of Claims and in dismissal of the Action with prejudice. (Nilges Dec. at ¶ 11; Agreement at ¶ E).

Neither Party makes any admissions or concessions as to the claims or defenses in the Action. Rather, this Settlement relieves the Parties of the burden, expense, risks, and uncertainty of litigation. (Nilges Dec. at ¶ 12; Agreement at ¶ F).

Counsel for both sides investigated the facts relating to the claims alleged in the Action. The Parties engaged in extensive factual and legal discussion and correspondence regarding Plaintiff's legal theories, the propriety of collective action treatment, and Defendant's defenses. Plaintiffs' Counsel and Plaintiff have concluded that the Settlement, on the terms set forth in this Agreement, is fair, reasonable, adequate, and in the best interests of Plaintiff and all Opt-In Party Plaintiffs because: (1) there are numerous disputed issues of fact and law relating to the claims sought to be asserted in the Action, including the scope of the Action; (2) there will be considerable expense and time necessary to prosecute the Action through trial, as well as risks, uncertainty, and costs of further prosecution; (3) it is possible that Plaintiff may not be able to maintain the Action as a collective action under the FLSA or as a class action under Fed. R. Civ. 23; (4) there will be uncertainties of complex litigation; and (5) the relative benefits conferred upon Plaintiff and the Opt-In Party Plaintiffs under the Agreement are substantial. (Nilges Dec. at ¶ 11; Agreement at ¶ H).

**B.**     **Summary of the Settlement.**

In addition to Plaintiff and two (2) current Opt-In Plaintiffs (ECF No. 3), the Settlement includes the Opt-In Party Plaintiffs, and the current and former hourly production employees of Athens Foods, Inc. who were involved in the manufacturing, packaging, or handling of food or food products and who worked 40 or more hours in a workweek at any time from February 23, 2020, through March 24, 2023, and for whom data was provided by the Defendant. (Agreement at ¶ 7).

The total settlement amount is **$190,000.00**, which includes: 1) all Individual Settlement Payments; (2) Service Award for Plaintiff; (3) Plaintiffs' Counsel's attorneys' fees in the amount of one-third (1/3) of the Global Settlement Fund; (4) Plaintiffs' Counsel's litigation expenses; and (5) the costs of settlement administration. In addition, Defendant will make all required employer

3

contributions with respect to any portions of the Individual Settlement Payments as wages under Internal Revenue Service ("IRS") Form W-2, and these contributions will not be deducted from the Global Settlement Fund. (*Id*. at ¶¶ 8, 36).

For purposes of Settlement only, the Parties agree that Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b) of the FLSA. (*Id*.at ¶ 29). A Notice of Settlement will be sent to the Eligible Settlement Participants, along with a Claim Form to join the Settlement. (*Id*. at ¶¶ 3, 11, 47). Those who join the Settlement will become Opt-In Party Plaintiffs and receive settlement payments and, in exchange, they will release the Released Parties from the Released Claims for the Release Period, as outlined in the Agreement. (*Id*. at ¶¶ 12, 19-22).

After deducting the Service Award, attorneys' fees, litigation costs, and settlement administration costs, Opt-In Party Plaintiffs will receive Individual Settlement Awards according to their respective *pro rata* share of the Net Settlement Fund, calculated by the number of workweeks each Eligible Settlement Participant worked. (*Id*. at ¶ 34). Any Individual Settlement Awards that go unclaimed will revert to Defendant. (Agreement at ¶¶ 57-58).

The Settlement provides for a Service Award of **$5,000.00** to Plaintiff in consideration for his substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible Settlement Participants. (Agreement at ¶ 32). Plaintiff provided substantial time and effort in communicating with Plaintiffs' Counsel during the prosecution of the Action and negotiations and was available throughout the entire negotiation process, including mediation and subsequent discussions. (Nilges Dec. at ¶ 13). Defendant agrees this amount is reasonable and does not contest this application. (Agreement at ¶ 32).

II. **The Court should grant FLSA approval.**

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).

Here, Settlement satisfies the seven factors used by the Sixth Circuit when evaluating class/collective action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)), *Crawford*, 2008 WL 4724499 at *3.

#### 1. No indicia of fraud or collusion exists.

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018). Plaintiffs' Counsel and Defendant's Counsel have extensive

5

experience litigating FLSA claims, including claims for unpaid overtime, and each were given the opportunity to assess the merits of the Parties' claims and defenses, as well as the potential damages at issue in this case. The Parties contested the issues early, and Defendant continues to deny any wrongdoing. (Nilges Dec. at ¶¶ 2-7, 9-11).

Agreement was achieved only after arm's-length, good faith negotiations. (*Id.* at ¶ 11). Moreover, the settlement was negotiated with an experienced independent mediator, Michael Ungar. "The participation of an independent mediator in the settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007). And notwithstanding settlement, the Parties continue to disagree as to whether any wages are owed, whether there was an overtime violation under FLSA or Ohio law, whether a two- or three- year statute of limitations under the FLSA was applicable, whether liquidated damages under the FLSA are recoverable, and whether the matter could be maintained on a collective/class basis. (Nilges Dec. at ¶ 12). As such, there are no indicia of fraud or collusion.

    **2. The complexity, expense, and likely duration of continued litigation favor approval**.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *Brent v. Midland Funding, LLC,* No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sep. 1, 2011) (Aug. 17, 2018) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.") (further citation omitted).

If this case had not settled, the Parties would be required to engage in costly litigation and discovery, such as written discovery, document production, depositions, possible site visits and

6

time-studies, dispositive motions, trial, and potential appeals. The Settlement, on the other hand, provides substantial relief to the Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (Nilges Dec. at ¶ 14).

### 3. The amount of discovery engaged in by the Parties.

The Parties engaged in substantial investigation and analysis before mediation and while negotiating the Settlement. In advance of mediation, Defendant provided Plaintiffs' Counsel time and pay data for the putative collective/class, from which a damages model was created and shared with the mediator and Defendant's Counsel. The model served as a basis for settlement negotiations. The model included toggles, by which certain parameters/controls could be adjusted and which calculated estimated damages in real-time, including the ability to adjust the estimated donning and doffing time for multiple locations, relevant time period, and percentage of liquidated damages. (Nilges Dec. at ¶ 10).

During negotiations, Counsel argued vigorously for their respective positions, and disputes remain. Consequently, not only were the factual and legal issues thoroughly investigated, but the potential damages in this case were also investigated as well. (Nilges Dec. at ¶¶ 9-12).

As detailed in the attached declaration of Hans A. Nilges, Plaintiffs' Counsel conducted a rigorous risk analysis, which included considerations of factors such as: (1) whether the case could proceed on a collective/class basis; (2) whether Plaintiff would survive a motion for summary judgment; (3) whether Plaintiff would prevail at trial; and (4) damages that may be awarded by a jury. (*Id.* at ¶¶ 11-12, 15-32).

Thus, the Parties were able to make informed decisions whether Settlement was in the best interest of their respective clients, given the potential damages at issue and the risk of loss.

Settlement was the product of well-informed judgments about the adequacy of resolution compared to the risk of continued litigation. Accordingly, this factor supports settlement approval.

### 4. The likelihood of success on the merits.

Counsel for both sides believe in the merits of their clients' positions, while also recognizing that continued litigation will be uncertain in terms of duration, cost, and result. (Nilges Dec. at ¶ 14). Settlement represents a compromise of disputed claims. Specifically, in the Action, Plaintiff alleged that Defendant failed to compensate hourly production employees for time spent donning and doffing sanitary clothing, washing their hands, and associated travel and wait times, all required by federal food safety regulations, resulting in unpaid overtime for those working more than 40 hours a week. (ECF No. 1). On the other hand, Defendant disputes the asserted claims and raised a number of defenses. (ECF No. 9; Agreement at ¶¶ G, I).).

Accordingly, if this case did not settle, it is possible that the Opt-In Party Plaintiffs will receive no compensation or, if they do receive compensation, it would be after protracted litigation, likely also involving appeals. By settling the case at this relatively early stage of the litigation, the Parties and Opt-In Party Plaintiffs bypass the inherent risks of litigation and achieve finality on this matter. (Nilges Dec. at ¶ 11). By settling the case at this relatively early stage of the litigation, the Parties bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the Settlement. *Satterly v. Airstream, Inc*., No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *18 (S.D. Ohio Sep. 25, 2020) ("the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor")(further citation omitted). Accordingly, this factor favors approval of the settlement.

### 5. The opinion of Plaintiffs' Counsel favors approval.

"The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); and *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

Here, Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and vigorously advocated in the best interests of the Plaintiff and the other Eligible Settlement Participants. And, as detailed in the attached declaration, based on the calculated EV, Plaintiffs' Counsel is confident that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Nilges Dec. at ¶¶ 11, 29). Accordingly, this factor favors approval of the settlement.

### 6. The reaction of absent collective members.

Settlement provides clear and easy to understand notice of the settlement and provides for 60 days by which Eligible Settlement Participants can join. Additionally, unlike Rule 23, participants must affirmatively join, and the Parties have agreed that the Court will retain jurisdiction over performance of the Settlement. Plaintiffs' Counsel thoroughly discussed the settlement with Plaintiff, who likewise agrees that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Nilges Dec. at ¶ 29).

Further, Plaintiff obtained declarations from the current Opt-in Plaintiffs, who express that they are happy that this matter is resolved and expect that proceeds will benefit them and their families, and that they urge the Court to approve the settlement. (**Exhibit 4**, at ¶¶ 2, 4).

**7. The public interest.**

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13 and *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *11 (N.D. Ohio Mar. 26, 2019) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D.Ohio 2007)). As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).

Here, like in *Wright*, "the settlement confers immediate benefits on the Settlement collective, avoids the risks and expense in further litigation, and conserves judicial resources." *Id*. Rather than face the risk and uncertainty of continued litigation, the Settlement confers immediate benefits on the Plaintiffs, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

**B.     The Settlement distributions are fair, reasonable, and adequate.**

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See e.g.*, *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8, 2010); and *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

According to Plaintiffs' Counsel, the settlement amount exceeded their calculated expected value, which supports their opinion that the Settlement is fair, reasonable, adequate, and is in the best interest of the Eligible Settlement Participants. (Nilges Dec. at ¶ 29). Importantly, Judge Posner writing for a Seventh Circuit panel concluded that an EV is the proper method for

10

determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (explaining an EV calculation where a settlement of $7 million would be justified even where theoretical damages not accounting for compounded risk of loss could be up to $1 billion). *See also*, *Siddiky v. Union Square Hosp. Grp.*, 2017 U.S. Dist. LEXIS 75301, at *16 (S.D.N.Y. May 17, 2017); *Anderson v. Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991); *Chase v. Viaquest Residential Servs.*, S.D. Ohio No. 22-cv-1974, 2023 U.S. Dist. LEXIS 41416, at *3-4 (Mar. 10, 2023); *Cheikh Fassa, ex rel. Himself & Others Similarly Situated v. Express Inc.*, S.D. Ohio No. 2:21-c:22-cv-v-542, 2022 U.S. Dist. LEXIS 73599, at *4 (Apr. 5, 2022); *Johnson v. Centor, Inc.*, No. 5:19-cv-2622, 2021 U.S. Dist. LEXIS 213003, at *3 (N.D. Ohio Nov. 4, 2021). Accordingly, the settlement is fair, reasonable, and adequate.

### 1. The individual payments are reasonable and adequate.

According to Plaintiffs' Counsel, the total settlement amount reflects recovery of approximately more than 6.5 minutes of daily donning/doffing, plus 100% liquidated damages. (Nilges Dec. at ¶ 30). *See also, Ransom v. Burrows Paper Corp.*, No. 2:20-cv-3824, 2022 U.S. Dist. LEXIS 10638, at *4 (S.D. Ohio Jan. 18, 2022) (finding that a recovery of 42% of alleged overtime damages is an "excellent result"); *Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 U.S. Dist. LEXIS 166605, at *8 (S.D. Ohio Dec. 2, 2016) (approving a settlement that represented approximately 55% of allegedly owed wages). Thus, the Settlement results in a substantial recovery and supports the finding that the individual payments are reasonable and adequate.

Each Opt-In Party Plaintiff will receive a *pro rata* share of the Net Settlement Fund using the formula set forth in the Agreement, when comparing each individual's workweeks to the

workweeks of all other Eligible Settlement Participants. (Agreement at ¶ 34). The *pro rata* allocations "ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds." *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *22. Accordingly, the Court should find that the Settlement Awards are reasonable and adequate.

    **2. The Service Award is proper and reasonable.**

The Agreement provides for a Service Award of **$5,000.00** to Plaintiff in recognition of, and in consideration for, his substantial assistance rendered to Plaintiffs' Counsel and in pursuing the rights of all Eligible Settlement Participants. Courts routinely approve service awards to plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *18, and *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *7.

Here, Plaintiff provided substantial time and effort in communicating with Plaintiffs' Counsel during the prosecution of the Action and negotiations and negotiations and was available throughout the whole day of mediation. He also put his name on the line, filing a lawsuit on the public docket, and taking a risk of potentially being "black-listed." (Nilges Dec. at ¶ 33). Defendant agrees this amount is reasonable and does not contest this application. (Agreement at ¶ 32).

    **3. The attorneys' fees to Plaintiffs' Counsel are proper and reasonable**.

After the Court has confirmed that the terms of settlement are fair to the plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA

provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).

In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third (1/3) of the total settlement amount, or **$63,333.33**. "The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement." *Satterly*, 2020 U.S. Dist. LEXIS 210868, at *28 (citing *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993)). Indeed, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share…." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010). "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, N.D. Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (July 27, 2018); *see also, Osman v. Grube, Inc.*, N.D. Ohio No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district.") (Internal citation omitted).

13

This conclusion was reiterated in *Harsh v. Kalida Mfg.*, N.D. Ohio No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at *20 (Sep. 13, 2021). In *Harsh*, the Court held that while a Court can utilize either the percentage-of-the-fund or the Lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *19-20. The Court further noted that the Lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* at *20. In contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation costs. They not only invested time, but also paid significant expenses up front. They will not be paid for any time during effectuation of the settlement. (Nilges Dec. at ¶ 34). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, S.D. Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (Dec. 3, 2019); *see also, Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15 ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Courts acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *16. Given

14

the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, S.D. Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."). An award of one-third (1/3) of the settlement fund is reasonable and still advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; and *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Defendant does not oppose the award of fees and agrees the request is reasonable. (Agreement at ¶ 32). Accordingly, the Court should approve the requested attorneys' fees.

### 4. The Court should authorize reimbursement of costs.

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which are presently **$4,056.35**. (Nilges Dec. at ¶ 34). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id*.

Expenses include the investigation costs, filing fee, service, processing of produced data and creation of damages model, and mediation fees. (Nilges Dec. at ¶ 34). Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in

15

obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel. Defendant does not oppose the reimbursement of costs and agrees the request is reasonable. (Agreement at ¶ 32).

### III. CONCLUSION.

The Parties submit that this settlement is a fair, reasonable, and adequate resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties respectfully request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve the requested service payment; (3) approve Plaintiffs' Counsel's request for attorney fees and expenses; and (4) retain jurisdiction to enforce the settlement, if necessary.

Respectfully submitted,

| **NILGES DRAHER LLC** | **HAHN LOESER AND PARKS LLP** |
|---|---|
| */s/Hans A. Nilges* | */s/Andrew J. Wolf (with permission)* |
| Hans A. Nilges (0076017) | Steven E. Seasly (0070536) |
| 7034 Braucher St., N.W., Suite B | Andrew J. Wolf (0091054) |
| North Canton, OH 44720 | 200 Public Square, Suite 2800 |
| Telephone: 330-470-4428 | Cleveland, OH 44114 |
| Facsimile: 330-754-1430 | Telephone: (216) 621-0150 |
| Email: hans@ohlaborlaw.com | Facsimile: (216) 241-2824 |
| | Email: sseasley@hahnlaw.com |
| | awolf@hahnlaw.com |
| *Counsel for Plaintiffs* | *Counsel for Defendant* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 7, 2024, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                  */s/ Hans A. Nilges*
                                                  *Counsel for Plaintiffs*